Kathy NIEGOS, Appellant/Petitioner,

v.

ARCELORMITTAL BURNS HARBOR LLC, f/k/a ISG Burns Harbor LLC, Appellee/Respondent.

No. 93A02–1007–EX–762.

Court of Appeals of Indiana.

Dec. 14, 2010.

W. Russell Sipes, Todd Barnes, George & Sipes, LLP, Indianapolis, IN, Attorneys for Appellant.

Tina M. Bengs, Hoeppner Wagner & Evans LLP, Merrillville, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Petitioner Kathy Niegos appeals from the Indiana Worker's Compensation Board's ("the Board") dismissal of her claim, pursuant to the Occupational Disease Act ("the ODA"), against Arcelor-

Mittal Burns Harbor LLC, her late husband's former employer. Niegos contends that the Board erroneously concluded that the "absolute bar" provision of ODA should apply when she has resolved some, but not all, claims against third-party defendants. ArcelorMittal counters that receipt of any third-party settlement relieves it of any liability under the ODA and that Niegos's failure to notify it before accepting third-party settlements forfeits her rights under ODA. Concluding that Niegos's failure to notify ArcelorMittal before entering into third-party settlements is fatal to her ODA claim, we affirm.

## FACTS AND PROCEDURAL HISTORY

Daniel Niegos died of lung cancer on July 18, 2004, allegedly contracted as a result of asbestos exposure while employed by ArcelorMittal. (Appellant's App. 13). On November 15, 2005, Niegos filed an ODA claim on behalf of her deceased husband. (Appellant's App. 11). In addition, Niegos filed a civil action against thirty-six third-party defendants who manufactured, sold, or used the asbestos products that allegedly caused Daniel's lung cancer. (Appellant's App. 13). As of December 10, 2009, Niegos had settled with several of the third-party defendants, receiving a total of $122,327.92. (Appellant's App. 8). Niegos did not notify ArcelorMittal before entering into any of the third-party settlements. (Appellant's App. 25).

On December 10, 2009, Board member A. James Sarkisian dismissed Niegos's claim on the basis, among others, that she had failed to notify ArcelorMittal prior to obtaining third-party settlements. (Appellant's App. 10). On June 18, 2010, the full Board adopted Sarkisian's decision. (Appellant's App. 16).

## DISCUSSION AND DECISION

### Standard of Review

▆▆▆▆ An appellant faces a deferential standard of review when challenging the Board's findings. *Wimmer Temporaries, Inc. v. Massoff,* 740 N.E.2d 886, 888 (Ind.Ct.App.2000), *trans. denied.* When reviewing an appeal from a decision of the Worker's Compensation Board, this court is bound by the Board's findings of fact and may consider only errors in the Board's conclusions of law. *Indiana Michigan Power Company v. Roush,* 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999), *trans. denied.* "However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to the one reached by the Board." *Id.*

We employ a two-tiered standard of review: 1) we examine the evidence in the record for competent evidence of probative value to support the Board's findings, and 2) we examine the findings to determine their sufficiency to support the decision. *Wimmer,* 740 N.E.2d at 888. The Board has an obligation to enter specific findings of fact that support its ultimate conclusions of law. *Indiana Michigan Power Company,* 706 N.E.2d at 1113 (citing *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 32 (Ind.1981)). The findings must be stated with sufficient specificity, with regard to contested issues, so as to allow intelligent review. *Id.* In conducting the review, this court will neither weigh evidence nor assess the credibility of witnesses and will consider only the evidence most favorable to the award, together with all reasonable inferences. *Zike v. Onkyo Mfg., Inc.,* 622 N.E.2d 1055, 1057 (Ind.Ct.App.1993). Therefore, to prevail, [an appellant] must demonstrate that there was no proba-

tive evidence from which the Board might reasonably conclude as it did. *See Wimmer,* 740 N.E.2d at 888.

*Graycor Indus. v. Metz,* 806 N.E.2d 791, 797–98 (Ind.Ct.App.2004), *trans. denied.*

**Whether Niegos's ODA Claim was Properly Dismissed on the Basis that she had Failed to Notify ArcelorMittal of Third–Party Settlements**

 As we have noted, the ODA is part of Indiana's worker's compensation scheme. *Roberts v. ACandS, Inc.,* 806 N.E.2d 1, 3 (Ind.Ct.App.2004).

More than twenty years after introduction of the Worker's Compensation Act ("WCA"), our General Assembly enacted the ODA, Ind.Code 22–3–7, in order to protect employees by providing compensation, without regard to fault, for those who contracted occupational diseases which were generally not covered under the WCA. *Spaulding v. Int'l Bakers Servs., Inc.,* 550 N.E.2d 307, 309 (Ind.1990); *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1126–27 (Ind.Ct. App.1993). By authorizing compensation for certain diseases not caused by an employer's negligence, the ODA created new rights and remedies previously unrecognized by our common law. *Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271, 1275 (Ind.1994). As with interpretation of provisions of the WCA, the provisions of the ODA should be liberally construed in favor of the employee to effectuate its humane purpose. *Id.* Further, where, as here, the facts are not in dispute and the matter for our review is primarily a legal question, we do not grant the same degree of deference to the Board's decision as we would if the issue were of fact, because law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions. *See*

*Walker v. Muscatatuck State Dev. Ctr.,* 694 N.E.2d 258, 266 (Ind.1998).

The ODA provides the exclusive remedy for an employee against his employer when the employee develops an occupational disease. *See* Ind.Code § 22–3–7–6 (Burns Code Ed. Repl.1997). It has been observed, however, that in enacting the WCA, the legislature "never intended to abridge the remedies an employee has in tort against a third party." *Ross v. Schubert,* 180 Ind.App. 402, 407, 388 N.E.2d 623, 627 (1979). The same holds true for the ODA.

. . . .

While the ODA permits employees to seek worker's compensation benefits as well as seek recovery from third parties, it also contains provisions to further the general policy prohibiting an employee from obtaining a "double recovery" for his injury. *Cf. Waldridge v. Futurex Industries, Inc.,* 714 N.E.2d 783, 786 (Ind.Ct.App.1999) (discussing the policy based upon nearly identical language under the WCA), *trans. denied.*

*Roberts,* 806 N.E.2d at 3–4 (footnotes omitted).

Concerns regarding double recovery and the protection of employers' interests are addressed in the ODA at Indiana Code section 22–3–7–36 (2005), which provides in relevant part as follows:

(g) In such actions brought as provided in this section by the employee or the employee's dependents, the employee or the employee's dependents shall, within thirty (30) days after such action is filed, notify the employer or such employer's occupational disease insurance carrier, by personal service or registered or certified mail, of such fact and the name of the court in which suit is brought, filing proof thereof in such action.

ArcelorMittal contends, *inter alia,* that the Board properly dismissed Niegos's

ODA claim because she failed to notify it (as required by section 22–3–7–36(g)) of or obtain its consent for any of the third-party settlements she has entered into. While notification is required, no provision of section 22–3–7–36 specifically provides that dismissal of the ODA action is the appropriate remedy for failing to do so. The Indiana Supreme Court, however, while interpreting Indiana Code section 22–3–2–13 of the WCA (which is essentially identical to section 22–3–7–36 of the ODA) held that "an employer's worker's compensation liability terminates when the injured employee settles with a third-party tortfeasor without first obtaining the employer's consent." *Smith v. Champion Trucking Co.*, 925 N.E.2d 362, 365 (Ind. 2010) (citing *Waldridge*, 714 N.E.2d at 786; *Carrier Agency, Inc. v. Top Quality Bldg. Prods., Inc.*, 519 N.E.2d 739, 743 (Ind.Ct. App.1988), *trans. denied. McCammon v. Youngstown Sheet and Tube Co.*, 426 N.E.2d 1360, 1363 (Ind.Ct.App.1981); *Koughn v. Utrad Indust.*, 150 Ind.App. 110, 275 N.E.2d 572 (1971)). Niegos provides us with no reason, and we can think of none, to depart from this rule in the similar ODA context.

As previously mentioned, the ODA and WCA are both part of the same overall worker's compensation scheme, and the language and import of the provisions at issue here and those at issue in *Smith* are, for all intents and purposes, identical. Moreover, it is clear to us that the same policy considerations that informed the *Smith* decision apply with equal force here. As the *Smith* Court observed:

> Because the settlement with a third party terminates the employer's opportunity to recover its expenses from the party responsible for the employee's injuries, these absolute bar provisions are designed to prevent employees from settling with third parties without the employer's consent. We have previously

noted that the twin purposes of Section 13 are protecting the employer by providing it with subrogation rights, and preventing double recovery by the employee. *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1309 (Ind.1998). In particular, the purpose of the termination provision is to prevent employees from signing away the rights of employers. *Ansert Mech. Contractors, Inc. v. Ansert*, 690 N.E.2d 305, 307 (Ind.Ct. App.1997). Most recently, in *Doerr v. Lancer Transport Services*, 868 N.E.2d 890 (Ind.Ct.App.2007), *trans. denied*, the Court of Appeals cited this consideration in upholding the absolute bar....

> Our interpretation of Section 13, as a whole, is the legislature was attempting to protect simultaneously the financial interests of both the employee and employer. Permitting an employee to obtain a "quick and cheap" settlement with the third-party tortfeasor, and then requiring an employer to exchange unlimited benefits for whatever miniscule settlement the employee might enter, does not protect the financial interests of the employer.

*Id.* at 893.

*Smith*, 925 N.E.2d at 366.

These policy considerations are especially compelling in light of long-standing precedent that "if an employee settles with a third party without first obtaining employer's consent, the employer's sole avenue for reimbursement of worker's compensation payments is through the employee, and the employer may not continue to pursue the third party." *Id.* at 368 (citing *State v. Mileff*, 520 N.E.2d 123 (Ind.Ct. App.1988)). Although this rule does serve the interest of finality from the point of view of the third party, *id.*, it can have the effect of working great injustice on the employer. By settling with third parties,

Niegos has extinguished any claims ArcelorMittal might have had against those third parties, all without providing notice or the opportunity to participate in the process.[1]

It is undisputed that Niegos failed to notify ArcelorMittal of any of the settlements she entered into with third-party defendants. (Appellant's App. 25). In so doing, Niegos signed away ArcelorMittal's rights without its consent or notice, preventing it from protecting its interests during settlement negotiations. As such, Niegos has forfeited her right to proceed against ArcelorMittal under the ODA, and the Board properly dismissed her claim.

We affirm the judgment of the Board.

KIRSCH, J., concurs.

CRONE, J., concurs in result.

---

1. In any event, even if ArcelorMittal's claims against third-party defendants *were* to survive settlement, we would see little benefit in forcing them into expensive and time-consuming litigation in order to protect their interests, especially when there is no indication that providing notice would have been burdensome in this case. *See Smith*, 925 N.E.2d at 367 (noting that the rule regarding third-party settlements without employer consent "eliminates satellite litigation over the adequacy of the settlement" and that "notice and consent to settlement will not often be a burdensome requirement").